IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


DEBBIE GUSTAFSON, EXECUTRIX
FOR THE ESTATE OF MITCHELL W.
GUSTAFSON, DECEASED                                                    PLAINTIFF

v.                              CASE NO. 5:09CV00282 SWW-JTK

EMMA HAMER, ET AL.                                                    DEFENDANTS

**<u>Memorandum Opinion and Order</u>**

The Court has received proposed findings and recommendations from United States

Magistrate Judge Jerome T. Kearney.  After careful review of the findings and recommendations

and the timely objections thereto, as well as a <u>de novo</u> review of the record, the Court concludes that

the findings and recommendations should be, and are hereby, approved and adopted as this Court's

findings in all respects except the following.

Emma Prater Hamer.  Plaintiff asserts that Hamer violated Gustafson's constitutional rights

under the Eighth and Fourteenth Amendments not be subjected to cruel and unusual punishment.


> A prison official's deliberate indifference to a prisoner's serious medical needs
> constitutes cruel and unusual punishment in violation of the Eighth Amendment.
> *Alberson v. Norris,* 458 F.3d 762, 765-66 (8th Cir.2006). A prima facie case alleging
> deliberate indifference requires the inmate-plaintiff to demonstrate that she suffered
> from an objectively serious medical need and the 'prison officials actually knew of
> but deliberately disregarded that need.' *Id.* Medical malpractice alone, however, is
> not actionable under the Eighth Amendment. *Smith,* 458 F.3d at 724. For a claim of
> deliberate indifference, 'the prisoner must show more than negligence, more even
> than gross negligence, and mere disagreement with treatment decisions does not rise
> to the level of a constitutional violation.' *Estate of Rosenberg v. Crandell,* 56 F.3d
> 35, 37 (8th Cir.1995). Deliberate indifference is akin to criminal recklessness, which
> demands more than negligent misconduct. *Olson v. Bloomberg,* 339 F.3d 730, 736
> (8th Cir.2003).

*Popoalii v. Correctional Medical Servs.,*  512 F.3d 488, 499 (8th Cir. 2008).

The Court finds the evidence is undisputed that Jimmy Johnson designated Gustafson as a active suicide risk in his case notes which were available to Hamer. Whether she saw the notes or otherwise knew that Gustafson had been designated as a suicide risk is in dispute. The facts are undisputed that Hamer interviewed Gustafson and completed a 12-page mental health social history assessment. She noted that he had been diagnosed two months earlier with anxiety and prescribed Xanax. Hamer also noted that Gustafson told her he had thought of killing himself because of his sentence, which he had received two days earlier, and he had attempted to do so. She observed cuts in the bends of his arms. Hamer assessed him a slight suicide risk. Hamer testified Gustafson willingly signed a "no harm" contract by which he agreed to let prison staff know if he were having problems. Hamer said she told him what to do in the event he needed to talk with someone. She did not attempt to contact a psychologist or psychiatrist on duty or to call the physician who had prescribed Xanax. She did refer Gustafson to see the psychiatrist, which means his name was placed on a list for the next available clinic. She said Gustafson signed a release of medical information form and she passed that form along to the secretary, Joy Thomas. Hamer testified she did not think it was necessary to contact the psychiatrist about his medication based on her interview with Gustafson. The facts are that Hamer requested that security staff house Gustafson where he could be seen until he saw the psychiatrist. She noted in the request that he was not on precautions.

The Court finds there are no genuine issues of material fact in dispute as to whether Hamer acted reasonably in the circumstances. Whether or not she knew Gustafson was considered an active suicide prior to her contact with him, Hamer interviewed him without delay, made a detailed assessment, and personally observed him and witnessed his conversation with his wife in which he instructed her to take care of their property. She did not find him to be in crisis. Plaintiff cannot establish a genuine issue of material fact that would support a finding of a deliberate indifference on the part of Hamer.

Robert Parker. As administrator of mental health services for the ADC, Parker was responsible for training mental health staff. The Magistrate Judge determined there was an issue of fact as to whether Parker had adequately trained his staff. "A supervisor may be held individually liable under § 1983 . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

The evidence establishes that the ADC had policies in place to deal with inmates who are in crisis, specifically with regard to placing inmates on treatment precautions. There is also a policy addressing psychiatric services, including 24-hour on-call service for mental health needs. There is no evidence that Hamer was unaware of or did not follow the policies in place. She testified she knew she could call a psychiatrist and decided it was not necessary to do so in Gustafson's case. She also determined he was not in crisis and decided not to place him on any treatment precautions. There is no evidence that Parker had any notice that the training procedures in place were deficient. Even if the Court were to find a constitutional violation, there are no facts in dispute by which a jury could find such a violation was the result of inadequate supervision or training.

John Byus. As administrator of medical and dental services, Byus was responsible for ensuring that inmates had access to qualified health care providers.[1] In accommodating the delivery of medical services to inmates, the ADC contracted with CMS to provide those services. Defendant Byus was one of the persons responsible for contracting with CMS. He is responsible for monitoring CMS' compliance with policies, contract provisions, and management/clinical protocols. Under the contract,

---

[1] In their objections, the ADC defendants submit an affidavit of John Byus that was an exhibit in a previous case filed against CMS and the ADC, *Fegans v. CMS, et al.*, 5:04cv155 JLH.

CMS provides doctors, dentists, and other health care staff.   CMS employees are responsible for administering medication and medical and dental services to inmates.   Defendant Byus is not a physician and was not involved in the day-to- day delivery of medical services.  He does not supervise care giving staff, including psychiatrists.  The contract between the ADC and CMS required CMS to provide twenty-four hour a day access to psychiatric services.

There is no evidence that Byus had any responsibility or control over whether a medical physician was brought in by CMS to review Gustafson's medication upon his arrival at the ADC.  There is no evidence that any such inaction was brought to the attention of Byus.  The Court finds plaintiff fails to establish a genuine issue of material fact exists as to a violation of Gustafson's constitutional rights on the part of Byus.

John Gore.  The Court finds there are no genuine issues of material fact in dispute as to whether Gore was deliberately indifferent to Gustafson's serious medical needs.  Whether or not Hamer was one of the staff members Gore told that Gustafson would be arriving from the county jail, Hamer did promptly interview Gustafson.  She learned about Gustafson's suicide attempt at the county jail from him.  Upon his return to the unit, Gore spoke with Hamer, who told him about her assessment of Gustafson.  Based on these undisputed facts, the Court finds Gore is entitled to summary judgment.

Tracy Mungle.  Defendant Mungle testified he did not know Gustafson was on suicide watch, was on psychotropic medications, and was to be observed.  However, the undisputed evidence is that Gustafson was placed in a cell directly across from the control booth, and except for the seconds it took Gustafson to walk under the control booth in order to use the phone, Mungle able to observe, and did observe, Gustafson exit his cell, walk down the stairs to the phone, talk on the phone, and then proceed up the stairs.  Nothing about Gustafson's behavior was unusual.

There is no evidence that Mungle's decision to let Gustafson out of his cell to use the phone was made with deliberate indifference to a serious medical need.  There is no evidence that he had any

specific instructions regarding Gustafson.  Even assuming some inmates heard Gustafson ask for

medication, there is no evidence Mungle heard and ignored such a request. Accordingly, the Court finds

defendants' motion for summary judgment as to Defendants Hamer, Parker, Byus, Gore, and Mungle

as to the constitutional claims should be granted.

IT IS, THEREFORE, ORDERED that the summary judgment motion of Defendants Dr.

Stephen Broughton and Deborah York (Doc. No. 47) is DENIED as MOOT; that CMS Defendant's

motion for partial summary judgment (Doc. No. 50) is DENIED; and that ADC Defendants' motion

for summary judgment (Doc. No. 53) be GRANTED except as to the state negligence claim.

IT IS FURTHER ORDERED that the MOTION TO STRIKE (Doc. No. 79) is hereby

DENIED.

DATED this 7th day of July, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE